### WOOD, Ex'x, *v.* WRIGHT, Assignee.

*(Circuit Court, D. Indiana.   ——, 1880.)*

1. ASSIGNEE IN BANKRUPTCY — JUDGMENT CREDITOR. — An assignee in bankruptcy has a prior equity to a judgment creditor, where, under adverse proceedings, and through superior diligence, he has acquired land from the *bona fide* purchaser of the bankrupt's voluntary grantee.

In Equity.

DRUMMOND, C. J. This is a bill filed to determine the priority of lien between the plaintiff and the assignee of the bankrupts to a certain tract of land in Wells county, which originally belonged to one of the bankrupts, J. B. Julian.

The facts out of which the controversy arise are substantially these: Julian sold the land to the other bankrupt

who sold it to Eliza Bryant on the eighth of August, 1876. These sales, it is admitted, were without consideration, and the last grantee held the property subject to the rights of creditors. A few days after the property was sold to Eliza Bryant, this plaintiff recovered a judgment in this court against the Julians, upon which there is a balance still unpaid. In September, 1876, the Julians were adjudged bankrupts.

After all this had taken place, Jesse Cate loaned $1,000 to J. B. Julian, and in order to secure it he caused Eliza Bryant to transfer this property to Cate, and Cate made an agreement to reconvey it to Eliza Bryant upon the payment of the loan. Cate had no notice that Eliza Bryant held the property without a consideration. He therefore was a *bona fide* mortgagee of the property. It was conveyed to him by an absolute deed.

After this had occurred, the assignee brought suit in this court against Cate and the Messrs. Julian and Mrs. Bryant, to have the claim of Cate to the property set aside; or, if that could not be done, to have a judgment entered against the Julians for the value of the property; and the court held that Cate was an innocent purchaser, or grantee, and was entitled to protection; and that the Julians and Mrs. Bryant were liable for a certain amount, on which the court decided judgment should be entered against them; although judgment was not, in fact, then rendered, the court only giving an opinion on the points in controversy.

Subsequently, J. B. Julian made a proposition to the assignee to this effect: that no judgment should be entered in this court in the suit, and that he would procure for the assignee a good title to the property still held by Cate, to which proposition the assignee assented, providing it would meet the approval of the court, and that approval was given. Thereupon J. B. Julian caused a deed to be made by Martha Julian, of lands which she owned in Jasper county, to Cate, as security for the debt due to him in place of the land which he held by grant from Mrs. Bryant. That being done, Cate executed a quitclaim deed to Mrs. Bryant for the Wells county

land—the land now in controversy. The deed was delivered to Julian. It does not appear that Mrs. Bryant had any knowledge of this, but she also executed a quitclaim deed to the assignee, and delivered the same to Julian. Martha Julian and J. B. Julian also executed a quitclaim deed to the assignee.

Mrs. Wood was not a party to the suit pending in this court, and it is said the assignee had full knowledge of her judgment. Mrs. Wood caused an execution to be levied on the lands under her judgment, and the question is which has the better equity, the assignee or Mrs. Wood. I think the assignee has.

It seems to me, under the circumstances of the case, that the assignee must be remitted to the rights of Cate. Cate was the *bona fide* purchaser of the property, and held it relieved from the lien which undoubtedly existed on the part of Mrs. Wood prior to that time to the lands of Julian.

The lien against land held fraudulently from the owner must certainly cease to operate when it is transferred to a *bona fide* purchaser. That Cate was so, was held by this court. And, when the assignee has obtained his title under circumstances like these, it seems to me that he stands in the position of a *bona fide* purchaser, and is entitled to the protection of a court of equity. But, independent of this consideration, and admitting that there were equities alike on the part of Mrs. Wood and of other creditors of the bankrupts, still it seems to me that the assignee, by the superior diligence he has exhibted by suing the Julians and Cate, and, as the result of that litigation, having obtained a title to the property, should have the protection of a court of equity in preference to Mrs. Wood.

The bill of the plaintiff will be dismissed.